UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DONNA BERG,

                  Debtor-Appellant,        08-cv-05548 (DAB)

     v.
                                   *Oral Argument Requested*

DIANA G. ADAMS, the United States
Trustee for Region 2,

                  Appellee.
-------------------------------------------------------x

## DEBTOR-APPELLANT'S BRIEF IN SUPPORT OF APPEAL

**PICK & ZABICKI LLP**

369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000
On the Brief:  Douglas J. Pick (DP-5935)
               Eric C. Zabicki (EZ-0763)

*Counsel to the Debtor-Appellant*

Dated: July 28, 2008

# TABLE OF CONTENTS

**STATEMENT OF ISSUES PRESENTED** ..................................................... 1

**PRELIMINARY STATEMENT** .................................................... 1

**STATEMENT OF FACTS** ......................................................... 3

A.    The Debtor-Appellant ............................................. 3

B.    The Debtor-Appellant's Bankruptcy Filing ............................ 4

C.    Proceedings Under Chapter 11 of the Bankruptcy Code ...................... 7

D.    The Motion to Dismiss and the Entry of the Order Appealed From ................... 10

**JURISDICTION AND APPLICABLE STANDARD OF REVIEW** .......................... 13

**ARGUMENT** ....................................................... 14

THE BANKRUPT COURT ERRED IN ESTABLISHING A
ONE YEAR BAN ON ANY SUBSEQUENT BANKRUPTCY
FILING BY THE DEBTOR-APPELLANT ..................................................... 14

**CONCLUSION** .......................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

C-TC 9th Ave. Pshp. v. Norton Co. (In re  C-TC 9th Ave. Pshp.),
113 F.3d 1304 (2d Cir. 1997) ............................................................... 13

Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327 (2d Cir. 1999) .................... 14

Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933 (4th Cir. 1997) .................... 15

In re Dandy Doughboy Donuts, Inc., 66 B.R. 457 (Bankr. S.D. Fla. 1986) .................... 15

Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz),
341 B.R. 371 (B.A.P. 1st Cir. 2006) ............................................................... 15

In re Greenberg, 200 B.R. 763 (Bank. S.D.N.Y. 1996) ................................... 14[FN 9]

In Re Herrera, 194 B.R. 178 (Bankr. N.D. Ill. 1996) ........................................ 18, 19

In re Hughes, 360 B.R. 202 (Bankr. N.D. Tex. 2007) ........................................ 16

In re Ionosphere Clubs, Inc., 922 F.2d 984 (2d Cir. 1990) ................................... 13

In re Johansmeyer, 231 B.R. 467 (E.D.N.Y. 1999) ............................................ 13

In re Martin-Trigona, 35 B.R. 596 (Bankr. S.D.N.Y. 1983) ............................... 14, 15

In re McDermott, 77 B.R. 384 (Bankr. N.D.N.Y. 1987) ....................................... 15

Sundstrom Mortgage Co., Inc. v. 2218 Bluebird Limited Partnership
(In re 2218 Bluebird Limited Partnership), 41 B.R. 540, 545 (Bankr. S.D. Calif. 1984) .... 15

In re Ventura, 375 B.R. 103 (Bankr. E.D.N.Y. 2007) ......................... 13, 15, 16, 19, 20

## STATUTES

11 U.S.C. §105(a) ............................................................... 14

11 U.S.C. §109(g) ............................................................... 16

11 U.S.C. §349(a) ............................................................... 14

28 U.S.C. §158(a) ............................................................... 13

Fed. R. Bankr. P. 8013 ............................................................... 13

## STATEMENT OF ISSUES PRESENTED

Whether the United States Bankruptcy Court for the Southern District of New York erred in establishing a one year ban on any subsequent bankruptcy filing by the Debtor-Appellant in connection with the dismissal of her chapter 11 bankruptcy case.

*The Debtor-Appellant respectfully contends that the Court below so erred.*

## PRELIMINARY STATEMENT

Debtor-Appellant Donna Berg (the "Debtor-Appellant") respectfully submits this brief in support of her appeal from that certain Order Dismissing Chapter 11 Case (the "Order", Document No. 11 of the Debtor-Appellant's Designation of Contents for Inclusion in Record on Appeal)[1] entered on May 6, 2008 by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Honorable Burton R. Lifland presiding.  By way of the Order, the Bankruptcy Court dismissed the Debtor-Appellant's chapter 11 bankruptcy case *with prejudice to refiling for bankruptcy relief for a period of one year*.  The Bankruptcy Court's dismissal of the case is not at issue, but rather only the length of the prejudicial refiling period imposed.

Respectfully, and as more fully discussed herein, the Bankruptcy Court's preclusion of any subsequent bankruptcy filing by the Debtor-Appellant for one year is reversible as a matter of fact and law.  Case law is clear that, upon appellate review, this Court does not normally substitute its judgment for that of the Bankruptcy Court in circumstances similar to those presented herein.  However, this Court must nevertheless determine that the relief ordered by the Bankruptcy Court was premised upon some evidence of willful misconduct, abuse of the bankruptcy process or other

---

[1] References to documents contained in the Debtor-Appellant's Designation of Contents for Inclusion in Record on Appeal are indicated herein as "R." followed by the document number and any relevant page number or exhibit within the referenced document.

1

indicia of bad faith on the part of the Debtor-Appellant such as to warrant the harsh punishment imposed.  Otherwise, the Debtor-Appellant submits, the Bankruptcy Court's exercise of its discretionary authority, which is qualified and not absolute,  in this regard would have been, was abusive.  The Bankruptcy Court's discretionary authority must be used with care and due deliberation and must be based on appropriate circumstances and factual findings as they had existed at the time the Bankruptcy Court made its determination.

With the foregoing in mind, it is respectfully submitted that the Bankruptcy Court's entry of the Order was in error.  The Debtor-Appellant was not a serial bankruptcy filer; was not negligent in fulfilling her responsibilities under the Bankruptcy Code; was not guilty of any improper; willful or dilatory conduct; was not intentionally avoiding her pre-petition debts or attempting to hinder her creditors; did not file for bankruptcy solely to take advantage of the automatic stay; did not improperly conceal or improperly transfer any assets; did not incur significant unsecured debts immediately prior to her filing; did not ignore or disobey any court order; and did not fail to appear at any required meetings or hearings.  Instead, she is guilty of nothing more than not being a very good businesswoman, making business related mistakes and incurring debts in good faith which she was ultimately unable to pay all while her personal life was simultaneously in serious turmoil.  All in all, there was never any allegation nor factual finding of any egregious, willful, dilatory,  or bad faith conduct on the part of the Debtor-Appelllant.  Accordingly, the imposition of a one year ban on refiling was an abuse of the Bankruptcy Court's discretion.

## STATEMENT OF FACTS

### A.    The Debtor-Appellant

This appeal arises in connection with certain voluntary bankruptcy proceedings commenced by the Debtor-Appellant in the Bankruptcy Court.  The Debtor-Appellant is a 46 year-old woman currently residing in New York, New York.  The Debtor-Appellant was divorced from her husband in 2005 and is a single mother to her five year old son of whom she has primary custody.

In October, 2004, the Debtor-Appellant started Donna Berg Productions Inc. ("DB Productions"), a New York Subchapter S Corporation which is engaged in event planning (*e.g.* events introducing new products to the public on behalf of major-name corporations).  The Debtor-Appellant's work requires her to be present at those events and to be the "perfect hostess", insuring that the event proceeds in first-class fashion and does not go awry.  The Debtor-Appellant is (and always was) the sole principal and employee of DB Productions which she operates from her apartment.  She personally guaranteed many of the corporate obligations of DB Productions and often drew upon her personal credit accounts for the needs of DB Productions.

Unfortunately, in running her company, the Debtor-Appellant would sometimes incur debt obligations that were not reimbursed to her from her clients because of disputes over costs incurred (*e.g.* the Debtor incurred $40,078 in corporate car service that she provided to attendees of an event to go to and from the airport).  A lawsuit by the Debtor-Appellant over the charges would have destroyed any possible future work with the client and could have damaged her ability to attract new business opportunities.  In order to keep the company alive, the Debtor-Appellant borrowed $8,000 from her brother and a total of $136,000 from her father (both are scheduled unsecured claimants) which amounts she was ultimately unable to repay.  The Debtor-Appellant continues to operate DB Productions, her only source of income, with modest success.

3

Unfortunately, over the past several years, the Debtor-Appellant battled (and continues to battle) with depression and other psychological disorders. The Debtor-Appellant was advised by her psychiatric professionals that she suffered from a spending addiction, which was driven by certain psychological needs that she had never learned to meet in any other way. The Debtor-Appellant was in extreme denial about her problems and dealt with them as many addicts do, by avoidance, self-deception, and repression. The Debtor-Appellant's worsening financial condition only served to amplify her depression. Her condition was exacerbated by her unsuccessful to a husband who was unemployed for the duration of the marriage. All of these circumstances contributed to and furthered the downward spiral of her financial affairs and psychological well-being.

Ultimately, and after extensive medical treatment, the Debtor-Appellant became very motivated to work to resolve her financial problems and to create a life that would be healthful for her and for her child. As counsel to the Debtor-Appellant advised the Bankruptcy Court at the May 6, 2008 hearing which preceded the entry of the Order appealed from:

> **Mr. Pick:** Your Honor, by way of background. If you recall the facts, we have an individual and we have a business. The individual filed a Chapter 7 petition because of the extraordinary debt that she was carrying. She suffers from depression, she is under medical care. This was a recommendation of her doctor in order to start over. We Filed.

(R. 10, 7:18-25; 8:1-6).

## B.    The Debtor-Appellant's Bankruptcy Filing

On July 24, 2006 (the "Petition Date"), and at the suggestion of her psychiatric professionals and after consultation with counsel, the Debtor-Appellant filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court

(Case No. 06-11682 (BRL)). (R.1).  The Debtor-Appellant filed all of her schedules of assets and liabilities and required statements (together, the "Schedules"), pursuant to Rules 1007 and 1008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). (R. 1 and 2).

As of the Petition Date, the Debtor-Appellant was not a party to any lawsuit; was not subject to any tax lien or warrant; owned no real property; was current on her residential real property lease obligations; was not a party to any lease of any personal property; was not a judgment debtor under any judgment; and did not have any property held under any restraint.  This was the Debtor-Appellant's first time filing for relief under the Bankruptcy Code.  The Debtor-Appellant's sole purpose in seeking relief under the Bankruptcy Code was to obtain the benefit of a discharge under §727 of the Bankruptcy Code and to start her life fresh from her burdensome pre-petition debt obligations which she was unable to repay.

Robert L. Geltzer, Esq. was appointed as Interim Chapter 7 Trustee and, thereafter, became permanent Chapter 7 Trustee of the Debtor-Appellant by operation of law (the "Chapter 7 Trustee") at the first  §341(a) Meeting of Creditors held on August 29, 2006 (which the Debtor-Appellant attended and answered all questions posed).  By Orders dated January 11, 2007, the Chapter 7 Trustee was authorized to retain the law firm Bryan Cave LLP as his counsel, and the accounting firm Davis Graber Plotzker & Ward, LLP as his accountants, to assist in his administration of the Debtor-Appellant's chapter 7 estate.

The approximately $490,000.00 in general unsecured debts listed by the Debtor-Appellant in the Schedules was comprised primarily of: (a) amounts advanced by certain of the Debtor-Appellant's family members to DB Productions for use in its operations totaling not less than $144,000.00; (b) amounts charged by the Debtor-Appellant to her personal and DB Productions'

5

corporate credit cards totaling not less than $168,000.00; (c) amounts owed by the Debtor-Appellant

for her personal income taxes, and related interest and penalties, for various years between 1993 and

2000 totaling not less than $87,000.00; and (d) amounts owed to various vendors and service

providers to DB Productions totaling not less than $81,000.00 that she had personally obligated

herself to pay. (R. 1 and 2). The Debtor-Appellant further identified priority tax obligations (which

are non-dischargeable in bankruptcy) totaling not less than $40,000.00 for the years 2002 and 2004.

(R. 1).

Early on in the Debtor-Appellant's chapter 7 proceeding, the United States Trustee for

Region 2 (the "U.S. Trustee") took issue with, among other things, the Debtor-Appellant's apparent

purchase of expensive clothing (worn in the operation of her business) on her and DB Productions'

credit lines.[2] As such, and on March 30, 2007, the U.S. Trustee filed a motion with the Bankruptcy

Court seeking to dismiss the Debtor-Appellant's chapter 7 case as an alleged abuse of the provisions

of the Bankruptcy Code. (Document No. 1 of the United States Trustee's Counter-Designation of

the Record on Appeal).[3] Prior to any hearing having been held on that motion, multiple meetings

were held at the U.S. Trustee's Office (with the Debtor-Appellant in attendance each time) in an

effort to amicably resolve the U.S. Trustee's concerns as raised in its motion. The Debtor-Appellant

answered, and was totally responsive, to the many inquiries made by the U.S. Trustee relating to,

among other things, the charges made on her credit cards.

---

[2] At the May 6, 2008 hearing which preceded the entry of the Order appealed from, the Debtor-Appellant's counsel stated: "We then are faced with an issue as to whether or not certain of her expenses were extraordinary such as the dresses that she buys for the events that she attends with major corporations." (R. 10, 7:25; 8:1-3). The Bankruptcy Court stated that the alleged "abuse has never been fully explained except in colloquy in front of the court and that she needs to be very well dressed in order to function in her business, which is to show herself off at great expense, and that there is another entity out there that may or may not be bearing the freight...I think my comments from the bench have indicated that I am fully aware of all of those; you've placed them before me." (R. 10, 5:6-15; 8:4-6).

[3] References to documents contained in the United States Trustee's Counter-Designation of the Record on Appeal are indicated herein as "CR." followed by the document number and any relevant page number or exhibit within the referenced document.

The U.S. Trustee was genuinely interested in working with the Debtor-Appellant to find a mutually agreeable way to resolve the issues presented by the pending dismissal motion and the meetings were fruitful and productive.  The Debtor-Appellant's counsel was concerned that the Debtor-Appellant could not financially afford an evidentiary hearing in connection with the motion, that the Debtor-Appellant might not be able to psychologically handle the pressure of participating in such a hearing and that the Bankruptcy Court was inclined to agree with the U.S. Trustee and dismiss the chapter 7 case.[4]  Ultimately, it was mutually determined that the Debtor-Appellant and her creditors would best be served by the conversion of her chapter 7 case to a case under chapter 11 of the Bankruptcy Code with the understanding that the Debtor-Appellant would attempt to expeditiously file a proposed plan providing for a repayment of some amount to her creditors.[5]

Accordingly, by Order of the Bankruptcy Court dated October 2, 2007 (R. 3), and upon the application of the Debtor-Appellant (CR. 2), the Debtor-Appellant's chapter 7 case was converted to a case under chapter 11 of the Bankruptcy Code.  Said conversion had the effect of releasing the Chapter 7 Trustee of his rights, powers and duties over the Debtor-Appellant's estate.

**C.    Proceedings Under Chapter 11 of the Bankruptcy Code**

Upon the conversion of her chapter 7 case to a case under chapter 11 of the Bankruptcy Code, the Debtor-Appellant retained the law firm Pick & Zabicki LLP as her counsel and the accounting firm Fleming & Associates, P.C. as her accountants to assist in the administration of her

---

[4]  At the May 6, 2008 hearing, counsel to the Debtor-Appellant advised the Bankruptcy Court that "when we were going to do the [chapter] 7, much of the debt was over three years old; it would have been discharged in bankruptcy.  When we converted to an 11, we did so because of the clear threat that Your Honor was going to agree with the U.S. Trustee's Office and dismiss this case."  R. 10, 9:20-25.

[5]  The Debtor-Appellant was not eligible to convert her case to a case under chapter 13 of the Bankruptcy Code.

7

bankruptcy estate. The Debtor-Appellant determined early on that her assets were of minimal value in a liquidation for the benefit of her creditors. Many of the Debtor-Appellant's assets, such as her retirement account and certain of her personal property (*e.g.*, home furnishings, security deposits and the like) were exempted from collection and application in bankruptcy. Accordingly, the Debtor-Appellant concluded that any sale or liquidation of her assets would not generate funds sufficient to confirm a viable chapter 11 plan.

The Debtor-Appellant then focused her efforts towards an investigation of her anticipated future income to determine whether she could reasonably make a distribution to her creditors therefrom while reserving enough money to support herself and her child. The Debtor-Appellant concluded that if a restructuring of her obligations in chapter 11 could be achieved, the revenues generated from DB Productions' operations might be sufficient to fund a chapter 11 plan. In furtherance thereof, the Debtor-Appellant deposited the sum of $40,000.00 with her counsel which had been generated from DB Productions' operations.

With the foregoing strategy in mind, the Debtor-Appellant turned her efforts toward the administration of her bankruptcy estate. The Debtor-Appellant, with the assistance of her counsel and accountants, remained substantially current with regard to the filing of her monthly operating reports and the payment of the fees of the U.S. Trustee. (R. 4 through 7). In order to provide full disclosure of the Debtor-Appellant's income and the income of DB Productions, the Debtor-Appellant's monthly operating reports included copies of the corporate Profit and Loss Statements as well as other information concerning DB Productions.

The Debtor-Appellant also drafted a proposed plan of reorganization and disclosure statement to be filed with the Court so as to successfully exit from the Chapter 11 proceedings.

Although drafted, the Debtor-Appellant's plan was ultimately not filed because of the professional fees awared to the Chapter 7 Trustee's professionals by the Bankruptcy Court (hereinafter discussed) and the U.S. Trustee's motion to dismiss which lead to the entry of the Order appealed from.

In furtherance of effecting a successful reorganization, the Debtor-Appellant, again with the assistance of her professionals, also made substantial efforts to reconcile all asserted and potential claims against the Debtor-Appellant's estate. By way of example, and upon the application of the Debtor-Appellant, an Order dated October 15, 2007 was entered establishing November 20, 2007 as the last date for claimants to file proofs of claim for pre-petition obligations of the Debtor-Appellant. A Court-approved Notice to File Claims was mailed to all creditors and parties in interest in connection with the foregoing claims "bar date". A total of seven proofs of claims were filed against the Debtor-Appellant in accordance with the October 15, 2007 claims bar date Order.

On February 13, 2008, the former Chapter 7 Trustee's professionals filed applications for final compensation and reimbursement of expenses for services rendered on behalf of the Chapter 7 Trustee totaling $22,669.00 in fees and $4,121.52 in expenses (an aggregate of $22,790.52). Both the Debtor-Appellant and the U.S. Trustee objected to the foregoing requests. After a hearing, an Order was entered on March 14, 2008 awarding Bryan Cave LLP fees in the amount of $11,686.40 and expenses of $121.52 and awarding Davis Graber Plotzker & Ward LLP fees in the amount of $5,642.70 (an aggregate of $17,450.62).

In the interim, the Debtor-Appellant, with the assistance of her counsel and accountants, had successfully reconciled the amounts she owed to the United States Department of Treasury - Internal Revenue Service (the "IRS"). Other than the proofs of claim filed with the Bankruptcy Court (CR. 6), creditors of the Debtor-Appellant showed little to no interest whatsoever in her chapter 11 case

(*e.g.*, no requests for relief from the automatic stay or adversary proceedings were ever filed and none of the Debtor-Appellant's motions filed with the Bankruptcy Court were ever objected to).

As evidenced by the foregoing, the Debtor-Appellant actively prosecuted her chapter 11 proceedings in good faith and complied with her duties and responsibilities as a debtor-in-possession.

**D.    The Motion to Dismiss and the Entry of the Order Appealed From**

On March 28, 2008, the U.S. Trustee filed a motion to dismiss the Debtor-Appellant's chapter 11 case or, alternatively, to convert the case back to one under chapter 7 of the Bankruptcy Code pursuant to §1112(b) of the Bankruptcy Code (the "Dismissal Motion"). (R. 8). The Dismissal Motion was premised primarily upon allegations that:

    (a)    The Debtor-Appellant lacked the financial wherewithal to file a feasible plan of reorganization such that she would be able to pay the administrative claims of the Chapter 7 professionals, the administrative claims of the Chapter 11 professionals, the tax claim of the IRS and her unsecured debt. The U.S. Trustee supported this argument with the monthly operating losses reflected on the Debtor-Appellant's monthly operating reports; and

    (b)    The Debtor-Appellant had failed to pay the full amount of the statutory fees owed to the Office of the U.S. Trustee.

The Dismissal Motion *did not* expressly request that the Debtor-Appellant's chapter 11 case be dismissed with prejudice, and had requested that, as alternative relief to dismissal, that the case be converted to chapter 7 or that an order be entered imposing deadlines for the filing of a disclosure statement and a plan of reorganization within 30 days of the hearing. (R. 8).

On May 1, 2008, the Debtor-Appellant filed her response to the Dismissal Motion by which the Debtor-Appellant advised the Bankruptcy Court and the U.S. Trustee that, based on recent events (as for example, the award of $17,450.62 to be paid to the professionals retained in the

Chapter 7 case), she no longer believed that she could successfully confirm her chapter 11 plan.[6] (R. 9).  As such, the Debtor-Appellant advised the U.S. Trustee and the Court that she would consent to either the conversion of her case to chapter 7 or the dismissal of her chapter 11 case.

On May 6, 2008, a hearing was held before the Bankruptcy Court with regard to the Dismissal Motion.  (R. 10).  At the hearing, the Bankruptcy Court was advised that the Debtor-Appellant had no objection to the dismissal of her chapter 11 case or the conversion of the case to one under chapter 7.  The U.S. Trustee requested that any dismissal be with prejudice to any refiling for bankruptcy relief for a period of one year.  In response to the U.S. Trustee's oral request for a one year preclusion against any future filing, the Debtor-Appellant advised that she would not oppose the dismissal of her case, with prejudice, for a minimum of 90 days to a maximum of 180 days, but not for one year.  The Debtor-Appellant further advised the Bankruptcy Court that she opposed the dismissal of the case if the prejudicial refiling period was any longer than three to six months:

> **Mr. Masumoto**: Your Honor we're here today on the U.S. Trustee's motion to convert, or in the alternative dismiss this case.  I don't know if [Y]our Honor wants me to go through all of the details, but I guess the basic circumstances is that in this case, although the alternatives are there, we do urge a dismissal in this case.
>
> Just for background, I think your Honor is aware that this case was originally a Chapter 7.  Our office filed a motion to dismiss on the basis of abuse and bad faith.  The case was then converted to a Chapter 11.  And during the Chapter 11 proceeding it appears that the debtor is not really able to file a plan of reorganization.  And accordingly we did file this motion to convert or dismiss, although, as indicated, we do believe that this case should be dismissed.

---

[6]  The Debtor-Appellant's drafted Plan of Reorganization had provided for full payment of all administrative expenses, payment of the tax claims over the statutory period and a pro-rata distribution to the unsecured creditors.  The Plan was to be funded with the $40,000.00 from DB Productions and some additional financing from the Debtor-Appellant's father.  Unfortunately, the Debtor-Appellant's father refused to advance the funds otherwise required to pay the Chapter 7 Trustee's professionals' fees and expenses which substantially reduced the funds on hand for the Plan and made the Plan not financially feasible.

Your Honor, as filed on line, our order of dismissal did not specify, but I had discussed with counsel that we do believe that in this case the dismissal should be with prejudice to refiling for a period of one year. The debtor's counsel, to my understanding, does not agree to the one year; although he agrees, I believe his response indicates that he consents to a dismissal, at least up until recently, I haven't spoken to him today, but my understanding is that he opposes the dismissal for a one year period with prejudice.

**Mr. Pick**: Yes, sir. We will support either a dismissal or conversion to Chapter 7. If the court should deem the case should be dismissed, if the court was to set any time period, three months would be reasonable. But to extend it out one year...seems punitive, not [necessary].

(R. 10, 3:4-25; 4:1-10).

Ultimately, the Bankruptcy Court sided with the U.S. Trustee and ruled that the Debtor-Appellant's case be dismissed with prejudice to any refiling for a period of one year. In making its ruling, the Bankruptcy Court apparently considered, at a minimum:

(a)     The "large and expensive footprints" left by the Debtor-Appellant's chapter 7 and chapter 11 proceedings, an apparent reference to the professional fees and expenses of the Chapter 7 Trustee's professionals. (R. 10, 4:11-13).

(b)     The "substantial" claims asserted by the IRS and credit card companies such as American Express against the Debtor-Appellant. (R. 10, 4:14-22).

(c)     A perceived lack of an explanation of the "abuse" alleged by the U.S. Trustee in its prior motion to dismiss the Debtor-Appellant's chapter 7 case. (R. 10, 5-11).

(d)     The perception that the Debtor-Appellant was "harboring some intention" of refiling for bankruptcy relief after dismissal. (R. 10, 5:19-24).

(e)     The fact that the Debtor-Appellant had not caused DB Productions to file for bankruptcy relief, despite the interconnected nature of its financial affairs with the Debtor-Appellant's. (R. 10, 6:2-3; 12:13-15).

On May 6, 2008, the Order appealed from was entered by the Bankruptcy Court. (R. 11).

Believing that the Bankruptcy Court erred as a matter of fact and law, the Debtor-Appellant filed and served her Notice of Appeal from the Order on May 16, 2008. (R. 12).

12

## JURISDICTION AND APPLICABLE STANDARD OF REVIEW

This Court has jurisdiction to hear and determine this appeal pursuant to 28 U.S.C. §158(a) ("The district courts of the United States shall have jurisdiction to hear appeals...from final judgments, orders, and decrees...of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving..."). An order dismissing a chapter 11 case is a "final order" for purposes of 28 U.S.C. §158(a). *See*, *e.g.*, C-TC 9th Ave. Pshp. v. Norton Co. (In re  C-TC 9th Ave. Pshp.), 113 F.3d 1304 (2d Cir. 1997).

In reviewing the Order of the Bankruptcy Court, this Court must review any legal determinations *de novo*, any factual findings for clear error and any exercise of discretion for abuse thereof. *See*, *e.g.*, In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir. 1990); Fed. R. Bankr. P. 8013. A court abuses its discretion where "it ignore[s] 'a material factor deserving significant weight,' relied upon 'an improper factor,' or made 'a serious mistake in weighing' proper factors." In re Johansmeyer, 231 B.R. 467, 469 (E.D.N.Y. 1999) (*quoting* In re Lambeth Corp., 227 B.R. 1, 6-7 (1st Cir. BAP 1998)). The Bankruptcy Court's determination as to the length of the period of the bar to any subsequent bankruptcy filings by the Debtor-Appellant (*i.e.*, one year from the entry of the Order) was discretionary in nature. *See*, *e.g.*, In re Ventura, 375 B.R. 103, 111 (Bankr. E.D.N.Y. 2007).

## ARGUMENT

## THE BANKRUPTCY COURT ERRED IN ESTABLISHING A ONE YEAR BAN ON ANY SUBSEQUENT BANKRUPTCY FILING BY THE DEBTOR-APPELLANT

It is respectfully submitted that the Bankruptcy Court's dismissal of the Debtor-Appellant's chapter 11 case with prejudice to any refiling for a period of one year was improper as it was not supported by any evidence of factors warranting such harsh relief.

It is well settled in the Second Circuit that, in dismissing a chapter 11 case under §1112(b) of the Bankruptcy Code, the bankruptcy court may preclude the debtor from refiling for bankruptcy relief for a specified period. *See*, *e.g.*, Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 340-41 (2d Cir. 1999). Such authority is derived from the provisions of §§105(a)[7] and 349(a)[8] of the Bankruptcy Code. Id. However, *a finding of "cause" for such a preclusion must be made by the bankruptcy court within its discretion.* Id. at 339-40; 11 U.S.C. §349(a) (LexisNexis 2008) (emphasis added). "Where there exists a multiplicity of factors which would be sufficient to meet the cause requirement of [for dismissal], the cumulative effect will be considered in determining whether there exists sufficient cause for a dismissal with prejudice pursuant to §349(a). In re Martin-Trigona, 35 B.R. 596, 601 (Bankr. S.D.N.Y. 1983).[9]

---

[7] Section 105(a) of the Bankruptcy Code provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. no provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. §105(a) (LexisNexis 2008).

[8] Section 349(a) of the Bankruptcy Code provides: "Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title." 11 U.S.C. §349(a) (LexisNexis 2008).

[9] Although Martin-Trigona dealt with a request for dismissal of a chapter 13 case under §1307 of the Bankruptcy Code, that provision requires a similar determination of "cause" as does §1112(b) in the chapter 11 context and, thus, is informative on the issues presented herein. *See*, *e.g.*, In re Greenberg, 200 B.R. 763, 768 (Bank. S.D.N.Y. 1996).

Dismissal with prejudice to refiling is a "drastic remedy" which "should only be used in extreme situations." Martin-Trigona, 35 B.R. at 601 (*citing* Flaksa v. Little River Marine Construction Co., 389 F.2d 885, 887 (5th Cir. 1968), *cert. denied*, 392 U.S. 928, 20 L. Ed. 2d 1387, 88 S. Ct. 2287 (1968)); *see also* Ventura, 385 B.R. at 109. "Generally, this remedy is appropriate only where there is a clear record of 'delay and contumacious conduct' by the petitioner." Id. (*quoting* Durham v. Florida East Coast Railway Co., 385 F.2d 366, 368 (5th Cir. 1967)). "Courts generally decline to dismiss a bankruptcy case with prejudice unless there is evidence of egregious conduct on the part of the debtor demonstrating bad faith." Ventura, 385 B.R. at 109 (*citing* In re Hall, 304 F.3d 743, 746 (7th Cir. 2002)); Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 937 (4th Cir. 1997)). "Absent a showing of bad faith as grounds for dismissal of the Chapter 11 case, the Court will not... prospectively bar a bankruptcy filing by... the Debtors." In re McDermott, 77 B.R. 384, 387 (Bankr. N.D.N.Y. 1987).

In keeping with the foregoing, numerous courts have found dismissal with prejudice to be warranted where a debtor files a series of bankruptcy petitions so as to stay a foreclosure or other exercise of legitimate rights of secured creditors. *See*, *e.g.*, Casse, 198 F.3d 341-42; Tomlin, 105 F.3d at 937; Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz), 341 B.R. 371, 386 (B.A.P. 1st Cir. 2006). Other courts have found dismissal with prejudice to be appropriate where a debtor exhibits factors indicating bad faith. *See*, *e.g.*, Sundstrom Mortgage Co., Inc. v. 2218 Bluebird Limited Partnership (In re 2218 Bluebird Limited Partnership), 41 B.R. 540, 545 (Bankr. S.D. Calif. 1984) (imposing a six month ban on refiling after determining that the debtor had received heavily encumbered assets on the eve of filing); In re Dandy Doughboy Donuts, Inc., 66 B.R. 457, 458 (Bankr. S.D. Fla. 1986) (imposing a six month ban on refiling where debtor failed to file all required

15

schedules and debtor's counsel had "stubbornly refused" to comply with several court directives); In re Hughes, 360 B.R. 202, 205-06 (Bankr. N.D. Tex. 2007) (two year ban on refiling and $1,000 sanction was appropriate where debtor filed six chapter 13 cases without required schedules and documents, failed to disclose the previously filed petitions, and filed the sixth petition in violation of an order dismissing her previous case with prejudice to refiling for six months).  Similarly, §109(g) of the Bankruptcy Code[10] requires a *willful or intentional act* of the debtor to form "the basis for the harsh prospective relief of a bar to filing a bankruptcy case." Ventura, 375 B.R. at 111; 11 U.S.C. §109(g) (LexisNexis 2008) (emphasis added).

Turning to the instant case, it is respectfully submitted that the Bankruptcy Court's imposition of a one year preclusion on any refiling by the Debtor-Appellant constituted reversible error.  As discussed above, as of the Petition Date, the Debtor-Appellant was not a party to any lawsuit; was not subject to any tax lien or warrant; owned no real property; was current on her residential real property lease obligations; was not a party to any lease of any personal property; was not a judgment debtor under any judgment; and did not have any property held under any restraint. This was the Debtor-Appellant's first time filing for relief under the Bankruptcy Code.  The Debtor-Appellant's sole purpose in seeking relief under the Bankruptcy Code was to obtain the benefit of a discharge under §727 of the Bankruptcy Code and to start her life fresh from her burdensome pre-petition debt obligations which she was unable to repay.  There was simply no evidence before the Bankruptcy Court of any egregious, willful or bad faith conduct on the part of the Debtor-Appellant as were presented in the cases discussed above.

---

[10] Section 109(g) of the Bankruptcy Code provides, in pertinent part, that a debtor is not eligible to file a bankruptcy case for 180 days if a "[prior] case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case" or if "the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay..."  11 U.S.C. §109(g) (LexisNexis 2008))

A review of the record confirms that the Bankruptcy Court's apparent (but not express) finding of "cause" for a one year preclusion to refiling was premised upon, at most, the Debtor-Appellant's refusal to cause DB Productions to also file for bankruptcy[11]; the Bankruptcy Court's refusal to accept the Debtor-Appellant's explanation for her pre-petition purchase of expensive clothing[12]; the Bankruptcy Court's unilateral suspicions of a possible refiling by the Debtor-Appellant after the three to six month prejudicial period consented to by the Debtor-Appellant had expired; the large pre-petition date amounts owed by the Debtor-Appellant to the IRS and credit card companies[13]; and the existence of the amounts awarded to the Chapter 7 Trustee's professionals. Respectfully, none of the foregoing factors considered by the Bankruptcy Court rose to the level of egregious, contumacious or dilatory conduct, nor evidenced any bad faith.  The Debtor-Appellant filed, in the first instance, her chapter 7 petition in a good faith attempt to obtain a discharge of her pre-petition obligations.  Thereafter, the Debtor-Appellant gave her reorganization proceedings under chapter 11 her best shot but, unfortunately, she was not able to generate the funds necessary to confirm a viable chapter 11 plan.  Such circumstances did not warrant the imposition of the drastic and harsh relief awarded by the Bankruptcy Court.

---

[11]  With regard to the proposition that DB Productions also file for bankruptcy relief, counsel to the Debtor-Appellant advised the Bankruptcy Court: "We explained at the last hearing that her corporation is the vehicle by which she conducts business.  She is an events planner.  If clients discover that her corporation is in bankruptcy they will cease doing business with her, which will result in total financial devastation to her." (R. 10, 6:4-9).

[12]  Again, the Debtor-Appellant's work required that she be dressed in high fashion at the events that she coordinated.  As the Debtor-Appellant's counsel advised the Bankruptcy Court: "We then are faced with an issue as to whether or not certain of her expenses were extraordinary such as the dresses that she buys for the events that she attends with major corporations." (R. 10, 7:25; 8:1-3).

[13]  As discussed above, the Debtor-Appellant and her accountants had resolved the amounts owed to the IRS.  As priority obligations, such amounts would not have been dischargeable in bankruptcy.

17

Additionally, a review of cases in which a one year refiling ban was imposed confirms that the Debtor-Appellant's reasons for seeking bankruptcy relief and her post-Petition Date conduct did not present the Bankruptcy Court with any reasonable basis for a finding of "cause" for such a harsh punishment.  By way of example only, in In Re Herrera, 194 B.R. 178 (Bankr. N.D. Ill. 1996), the court was faced with the debtors' (a husband and wife) fourth chapter 13 filing in less than one year, each of which was filed for the purpose of staying eviction and foreclosure proceedings by their creditors.  Id. at 182.  The first chapter 13 filing, made solely by the husband, was dismissed after the debtor failed to attend the §341 Meeting of Creditors and his failure to make any plan payments. Id. at 183.  The second chapter 13 filing was made solely by the wife and was dismissed after she failed to timely file a plan and schedules.  Id.  The third chapter 13 case, filed jointly by the debtors only seventeen days after the dismissal of the husband's first case, was dismissed when the debtors attempted to submit the same plan that the husband had submitted in his first case and which he did not comply with.  Id.  The fourth chapter 13 filing at issue was made jointly only six days after the dismissal of the third case.  Id.  Thereafter, the Chapter 13 Trustee moved to dismiss the debtors case with prejudice as having been filed in bad faith.  Id. at 186.

The Herrera Court applied a "totality of circumstances test" in considering whether "cause" existed for dismissal with prejudice under §§109(g) and/or 349(a) of the Bankruptcy Code.  Herrera, 194 B.R. at 188.  The Herrera Court held that the chapter 13 case before it had been filed in bad faith because the debtors' serial filings were made solely for the purposes of obtaining the benefits of the automatic stay thereby delaying the real property proceedings and without any legitimate intent to reorganize and without any change in circumstances justifying the repeat filings.  Id.  The Herrera Court also noted the debtors' failure to appear at the §341 meetings, their repeated failure to make

18

any payments under any of the plans they proposed and their overall "abuse of the bankruptcy process." Id. at 190.  However, even though it was presented with such egregious and willful conduct by the debtors, the Herrera Court only attached a one year ban on any refiling by the debtors in dismissing their chapter 13 case.  Id.

Respectfully, the Debtor-Appellant's conduct before the Bankruptcy Court never approached the level of egregious, willful and/or bad faith conduct presented by the debtors in Herrera, yet the Bankruptcy Court attached the same one year refiling ban as did the Herrera Court.

Similar guidance can be found in the cases in which the bankruptcy court, in the exercise of its discretion, *declined* to order prejudicial relief in connection with a request for dismissal.  By way of example only, in In re Ventura, 375 B.R. 103 (Bankr. E.D.N.Y. 2007), the debtor had failed to comply with a random audit of his chapter 7 case by the U.S. Trustee and had further failed to appear at his §341 Meeting of Creditors.  Id. at 106.  Upon the motions of the U.S. Trustee and the Chapter 7 Trustee seeking to dismiss the debtor's case, the Ventura Court issued an order directing the debtor to contact the Chapter 7 Trustee to reschedule his §341 Meeting of Creditors and to appear at an adjourned hearing on the motions to dismiss.  Id. at 104.  The debtor did not comply with said order, but his counsel advised the Ventura Court that the debtor had filed his chapter 7 petition in good faith, but no longer wished to pursue the case or receive a discharge.  Id. at 106.  Based on the foregoing, the U.S. Trustee sought a one year ban on any refiling by the debtor under chapter 7 for a period of one year.  Id.

After discussing the various grounds for attaching prejudicial conditions to a dismissal order, and noting that each generally required a showing of willful misconduct, egregiousness or other indications of bad faith, the Ventura Court *declined* to attach any prejudicial conditions to its

dismissal of the debtor's chapter 7 case.  375 B.R. at 112.  In so holding, the <u>Ventura</u> Court stated:

> [I]t is plain that in the appropriate case, and based on the appropriate record, a bankruptcy court has the discretion to order prejudicial and prospective relief, including a bar to filing a future bankruptcy case, in response to a debtor's failure to comply with a random audit under BAPCPA.  But the discretion to direct such relief necessarily encompasses the discretion to grant or to deny it, based on the entire record.  If, for example, a debtor engages in fraud or misconduct in connection with the random audit of his or her bankruptcy case, then as with the debtor who engages in a scheme to prevent a foreclosure by filing a series of bankruptcy cases or transfers property for a nominal sum to someone who then files a bankruptcy case, barring that debtor from filing a bankruptcy case for six months or longer may be appropriate.
>
> Here, the record of this Chapter 7 case, does not establish that the Debtor has engaged in egregious conduct or a scheme to hinder his creditors.  This is the Debtor's first bankruptcy filing.  The record of the case does not indicate that the Debtor filed solely to take advantage of the bankruptcy stay.  Nor does the record suggest that the Debtor transferred or concealed assets, or incurred significant unsecured debt, in anticipation of his bankruptcy filing.  To the contrary, it appears from the record...that the Debtor commenced this bankruptcy case in good faith, but no longer seeks to pursue the case or to receive a discharge of his debt.
>
> What is more, the Debtor's failure to pursue this case and the resulting dismissal creates serious consequences for his financial future even without the prejudicial relief that the [United States Trustee] seeks.  First, once this case is dismissed, the Debtor will no longer be protected by the automatic stay and his creditors will be free to pursue their collection efforts against him.  Second, this Chapter 7 filing will appear on the Debtor's credit history and may well increase his difficulty and expense in obtaining credit.  Third, if the Debtor files one or more bankruptcy petitions within one year of the dismissal of this case, the protections of the automatic stay will be significantly diminished pursuant to Sections 362(c)(3) and 362(c)(4).  Finally, whenever a case is dismissed, a debtor faces the prospect that he or she may be barred from pursuing bankruptcy relief within 180 days of the dismissal of this case if the bankruptcy court in which the case is filed finds that the prior case was dismissed "for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case."  11 U.S.C. §109(g)(1).  These and other consequences of dismissal without prejudice appropriately and adequately address the Debtor's conduct in this case, and the Court shall exercise its discretion not to grant additional prospective relief.

375 B.R. 111-12 (internal citations omitted).

Respectfully, an appropriate exercise of the Bankruptcy Court's discretion in this case would have been to convert the case back to chapter 7 (as was consented to by the Debtor-Appellant) or, in the alternative, to dismiss the Debtor-Appellant's chapter 11 case without prejudice, or to attach a three to six month preclusion to refiling as would have been consented to by the Debtor-Appellant. By precluding the Debtor-Appellant from refiling for a period of one year, the Bankruptcy Court abused its discretion.

## CONCLUSION

Based upon the foregoing, the Debtor-Appellant respectfully requests that this Court reverse the May 6, 2008 Order of the Bankruptcy Court to the extent that it precluded the Debtor-Appellant from seeking relief under the Bankruptcy Code for a period of one year and grant the Debtor-Appellant such other and further relief as may be deemed just and proper.

Dated: New York, New York
      July 28, 2008

Respectfully Submitted,

**PICK & ZABICKI LLP**
Counsel to the Debtor-Appellant

By:      **s/Douglas J. Pick**
      Douglas J. Pick, Esq. (DP-5935)
      Eric C. Zabicki, Esq. (EZ-0763)
      369 Lexington Avenue, 12th Floor
      New York, New York 10017
      (212) 695-6000

21