UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

DONNA BERG,                                           Chapter 11
                                                      Case No. 06-11682 (BRL)
                       Debtor.
---------------------------------------------------------x
DONNA BERG,

                  Debtor-Appellant,            08-cv-05548 (DAB)
   v.

                                         *Oral Argument Requested*

DIANA G. ADAMS, the United States
Trustee for Region 2,

                  Appellee.
---------------------------------------------------------x

# DEBTOR-APPELLANT'S BRIEF IN REPLY
# AND IN FURTHER SUPPORT OF APPEAL

**PICK & ZABICKI LLP**
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000
On the Brief:  Douglas J. Pick (DP-5935)
                      Eric C. Zabicki (EZ-0763)

*Counsel to the Debtor-Appellant*

Dated: September 5, 2008

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .......................................................................................... 1

**ARGUMENT**

    POINT I

    THE U.S. TRUSTEE MISCHARACTERIZES THE DEBTOR-APPELLANT'S CONSENT TO THE DISMISSAL OF HER CHAPTER 11 CASE .......................................................... 1

    POINT II

    THE U.S. TRUSTEE IMPROPERLY REFERS TO HEARSAY AND CONJECTURAL MATTERS WHICH WERE NOT BEFORE THE BANKRUPTCY COURT AND/OR MATTERS WHICH WERE EXPLAINED AND ADDRESSED .......................................................... 3

    POINT III

    THE U.S. TRUSTEE HAS NOT POINTED TO ANY EVIDENCE OF ANY WILLFUL MISCONDUCT, ABUSE OF THE BANKRUPTCY PROCESS OR OTHER INDICIA OF BAD FAITH ON THE PART OF THE DEBTOR-APPELLANT .................... 6

    **CONCLUSION** ............................................................................................... 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327 (2d Cir. 1999) ........................ 6

In re Martin-Trigona, 35 B.R. 596 (Bankr. S.D.N.Y. 1983) .................................................. 6 [FN4]

In re Ventura, 375 B.R. 103 (Bankr. E.D.N.Y. 2007) .......................................................... 10

## STATUTES

11 U.S.C. §707(b) ................................................................................................. 3 [FN 3], 4, 5

11 U.S.C. §1112(b) ................................................................................................ 3 [FN 3]

**PRELIMINARY STATEMENT**

The Debtor-Appellant[1] respectfully submits this brief in reply to the contentions set forth by the U.S. Trustee-Appellee in opposition to the Debtor-Appellant's appeal from the Order of the Bankruptcy Court dismissing her chapter 11 bankruptcy case *with prejudice* to refiling for bankruptcy relief for a period of one year. Respectfully, and as more fully discussed herein, the U.S. Trustee's opposition is disingenuous and is insufficient to overcome the Debtor-Appellant's demonstration of the Bankruptcy Court's reversible error.

**ARGUMENT**

**POINT I**

**THE U.S. TRUSTEE MISCHARACTERIZES THE DEBTOR-APPELLANT'S "CONCESSION" WITH REGARD TO THE DISMISSAL OF HER CHAPTER 11 CASE**

In support of its position, the U.S. Trustee asserts that the Debtor-Appellant "consented" to the dismissal of her chapter 11 case and, in doing so, "conceded" that a prejudicial refiling period of between three to six months would be "reasonable." See U.S. Trustee's Brief at pp. 2 and 9. However, while literally correct, the Debtor-Appellant's "concession" does not support the broad prejudicial relief ordered by the Bankruptcy Court when viewed in the context in which it was made.

As set forth at length in her Brief, the Debtor-Appellant had made extensive efforts to successfully exit chapter 11, but ultimately determined that she did not have the financial wherewithal to confirm a chapter 11 plan. See Debtor-Appellant's Brief at pp. 7-11.[2] As such, when faced with the Dismissal Motion, the Debtor-Appellant advised the U.S. Trustee and the

---

[1] Terms capitalized but not defined herein shall have the meanings assigned to them in the Debtor-Appellant's Brief in Support of Appeal, dated July 28, 2008 (the "Debtor-Appellant's Brief"), and/or the Brief of Appellee United States Trustee, dated August 22, 2008 (the "U.S. Trustee's Brief").

[2] Most importantly perhaps was the award of $17,450.62 in administrative expense claims in favor of the professionals retained by the Chapter 7 Trustee, which amounts the Debtor-Appellant was not able to fully pay in order to confirm a chapter 11 plan. Id. at pp. 10-11.

1

Bankruptcy Court that she would consent to *either* the conversion of her case to chapter 7 or the dismissal of her chapter 11 case. Id. Which one the Bankruptcy Court ultimately chose was of no concern to the Debtor-Appellant and was also apparently of no concern to any of the Debtor-Appellant's creditors, none of whom ever appeared before the Bankruptcy Court, appeared at the 341 Meeting or filed any pleadings with the Bankruptcy Court (other than certain limited proofs of claim).

The U.S. Trustee later requested that the case be dismissed (as opposed to converted to chapter 7) and that such dismissal be *with prejudice* to any refiling for bankruptcy relief for a period of one year. Solely in an effort to compromise so as to avoid further cost, delay, time and/or expense, and because she harbored no intent of refiling either in the near or distant future, the Debtor-Appellant advised that she would not oppose the dismissal of her case, with prejudice, for a minimum of three months to a maximum of six months, *but would oppose* any prejudicial period greater than six months. (R. 10, 4:5-10).

Although the Debtor-Appellant's counsel characterized a prospective three to six month prejudicial period as "reasonable" (R. 10, 4:9), the syntax used must be viewed in the context in which it was made. Seeing no need or benefit in opposing a minimal prejudicial period to a potential refiling, and wishing to avoid unecessary cost, expense and time, the Debtor-Appellant agreed not to oppose the imposition of such a minimal preclusion. The Debtor-Appellant expressly reserved her rights to, and did in fact, oppose any prejudicial period in excess of six months. (R. 10, 4:5-10). Viewed in this context, it is clear that there was no "concession" by the Debtor-Appellant that she would consider a prejudicial period of any length to be "reasonable" under the circumstances.

Respectfully, the U.S. Trustee's contentions in this regard are insufficient to support the Bankruptcy Court's preclusion of any bankruptcy refiling by the Debtor-Appellant for a period of one year.

2

# POINT II

## THE U.S. TRUSTEE IMPROPERLY REFERS TO HEARSAY AND CONJECTURAL MATTERS WHICH WERE NOT BEFORE THE BANKRUPTCY COURT AND/OR MATTERS WHICH WERE EXPLAINED AND ADDRESSED

In an effort to substantiate the prejudicial and prospective relief ordered by the Bankruptcy Court, the U.S. Trustee makes numerous references to improper hearsay and conjectural matters and/or to matters which the Debtor-Appellant had attempted, in good faith, to explain during the pendency of her bankruptcy proceedings. Such matters can be summarily addressed as follows:

(a) The U.S. Trustee repeatedly makes reference to the allegations made in support of its Section 707 Dismissal Motion. See U.S. Trustee's Brief at p. 5. In doing so, the U.S. Trustee fails to advise that the Section 707 Dismissal Motion, with regard to which no oral argument, testimony or documentary evidence was presented to the Bankruptcy Court, and no evidentiary hearing was held, was rendered moot by way of the Debtor-Appellant's conversion of her chapter 7 case to a case under chapter 11. Had the Section 707 Dismissal Motion proceeded to a determination, the Debtor-Appellant would have vehemently disputed the U.S. Trustee's factual and legal contentions on numerous grounds[3];

(b) The U.S. Trustee's reference to the Section 707 Dismissal Motion's allegations of "extravagent" spending and expenses are nothing more than conjectural, hearsay assertions. See

---

[3] The U.S. Trustee's contentions in this regard are further flawed by the fact that dismissal for "abuse" under §707(b) of the Bankruptcy Code applies *only to cases under chapter 7*. 11 U.S.C. §707(b) (LexisNexis 2008) ("...the court...may dismiss a case filed by an individual debtor *under this chapter*...or, with the debtor's consent, *convert such a case to a case under chapter 11* or 13 of this title, if it finds that the granting of relief would be an *abuse of the provisions of this chapter*.") (emphasis added). As this Court will further note, §707(b) expressly provides for the conversion by a debtor of his/her chapter 7 case to a case under chapter 11 (as the Debtor-Appellant herein had elected to do) as an alternative to dismissal. Id. There is no express correllary to a dismissal for "abuse" under §707(b) provided with regard to a dismissal of a chapter 11 case for "cause" under §1112(b) of the Bankruptcy Code. 11 U.S.C. §§707(b) and 1112(b) (LexisNexis 2008). It necessarily follows that any perceived "abuse" of the provisions of chapter 7 (in which, with limited exceptions, a debtor receives a discharge of all pre-petitions debts) allegedly supporting a dismissal under §707(b) is of limited, if any, import after conversion to chapter 11 (in which a debtor agrees to repay creditors some agreed upon amount under a plan. Accordingly, any continued application or consideration by the Bankruptcy Court of §707(b) of the Bankruptcy Code after to the Debtor-Appellant converted her case to chapter 11 would have been patently improper.

3

U.S. Trustee's Brief at p. 12.  In fact, many of these allegations were fully explained and/or addressed by the Debtor-Appellant to the U.S. Trustee and/or the Bankruptcy Court.  By way of example only: subsequent to her bankruptcy filing, and because of financial concerns, the Debtor-Appellant moved into a smaller apartment with a monthly rent well below the $7,100 per month apartment in which she had resided as of the Petition Date; the Debtor-Appellant fully and understandly explained that she requires the services of a nanny to care for her young son in order to permit her to run her event planning business, DB Productions, of which she is the sole employee; the Debtor-Appellant fully explained that many of the so-labeled "luxury purchases" made on her credit cards were made on behalf of DB Productions, were made to purchase clothing which the Debtor-Appellant determined, in good faith, to be necessary to her successful operation of DB Productions and/or may also have been the product of a clinically diagnosed "spending addiction" for which she received extensive professional treatment.  Moreover, and upon information and belief, none of the credit card charges alluded to by the U.S. Trustee were ever independently reviewed by the Bankruptcy Court.  Furthermore, at no time did any credit card company appear before the Bankruptcy Court to voice any concern over the charges made by the Debtor-Appellant. The credit card charges and expenses alluded to by the U.S. Trustee could not be undone, but the Debtor-Appellant did make all good faith efforts to explain and address them and to satisfy her credit card obligations through the chapter 11 process;

  (c) The U.S. Trustee fails to advise that the Debtor-Appellant and her counsel met with the U.S. Trustee on numerous occasions to explain the perceived "abuse" underlying the Section 707 Dismissal Motion.  See Debtor-Appellant's Brief at pp. 6-7.  The decision to convert the Debtor-Appellant's chapter 7 case to one under chapter 11 was made in consultation with, and with the support of, the U.S. Trustee.  As explained above, §707(b) of the Bankruptcy Code expressly

4

provides for voluntary conversion of a chapter 7 case to case under chapter 11 as an alternative to dismissal. Moreover, to the extent that the Bankruptcy Court may have perceived any lack of an explanation of the "abuse" alleged by the U.S. Trustee in its Section 707 Dismissal Motion (R. 10, 5-11), such allegations should have been, at most, of limited concern to the Bankruptcy Court in considering whether to impose a prejudicial refiling period in light of the mootness of the Section 707 Dismissal Motion and the innapplicabilty of §707(b) of the Bankruptcy Code in the chapter 11 context;

   (d) The U.S. Trustee further disparagingly alludes to, without expressly setting forth, the Debtor-Appellant's alleged testimony at the 341 Meeting. See U.S. Trustee's Brief at p. 5. Notwithstanding the fact that any out of court statements made by the Debtor-Appellant at the 341 Meeting constitute inadmissible hearsay, there is no indication anywhere in the record that the Bankruptcy Court reviewed or considered such statements in entering the Order or how they allegedly supported the prejudicial refiling period imposed thereby; and

   (e) The U.S. Trustee makes repeated references to the Bankruptcy Court's alleged "concerns" as to the intermingled nature of the Debtor-Appellant's and DB Productions' financial affairs. See U.S. Trustee's Brief at pp. 6-8, 14-16. The Debtor-Appellant went to great lengths to address all such concerns including, among other things, the modification of her monthly operating reports to include both her personal and DB Productions' financial statements. (R. 4-7). Additionally, the U.S. Trustee acknowledges that the Debtor-Appellant made a good faith attempt to respond to certain questions posed by the Bankruptcy Court in this regard by way of a letter dated January 29, 2008. (D-8 at ¶13). Although the Bankruptcy Court was apparently not pleased by the Debtor-Appellant's responses to its inquiries, there was never any allegation that said responses were anything other than honest, truthful, non-evasive, answers to the questions posed. Rather, it

5

was readily apparent (both prior to and after the Debtor-Appellant's submission of her written response) that the Bankruptcy Court only wanted the Debtor-Appellant to put DB Productions *into bankruptcy*, considering it to be the alter ego of the Debtor-Appellant. (R. 10, 6:2-3; 12:13-15). The Debtor-Appellant's reasoned refusal to put her operating company into bankruptcy when there was no perceived need to did not present any basis for the Bankruptcy Court to punish the Debtor-Appellant beyond the mere dismissal of her personal chapter 11 case.

Respectfully, none of the above-discussed matters raised by the U.S. Trustee provided any basis for the one year refiling preclusion imposed by the Bankruptcy Court.

## POINT III

### THE U.S. TRUSTEE HAS NOT POINTED TO ANY EVIDENCE OF ANY WILLFUL MISCONDUCT, ABUSE OF THE BANKRUPTCY PROCESS OR OTHER INDICIA OF BAD FAITH ON THE PART OF THE DEBTOR-APPELLANT

As the U.S. Trustee correctly notes, a finding of "cause" must be made by a bankruptcy court in precluding a debtor from refiling for bankruptcy relief for a specified period. See U.S. Trustee's Brief at p.12; see also, Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 339-40 (2d Cir. 1999).[4] While acknowledging the dissimilarities between the Debtor-Appellant's conduct in this case and the conduct of the many debtors in the cases cited in the Debtor-Appellant's Brief (as examples of instances in which cases were dismissed with/without prejudice), the U.S. Trustee nonetheless asserts that such "cause" was present here since the Debtor-Appellant allegedly "cause[d] delay that harm[ed] the estate, creditors and other parties in interest", did "not fulfill her duties as a debtor-in-possession", or evidenced an "intent to abuse of the judicial process", all such

---

[4] It should be noted that, as this Court held in In re Martin-Trigona, 35 B.R. 596, 601 (Bankr. S.D.N.Y. 1983), any decision regarding dismissal with prejudice for "cause" must be tempered by the fact that such relief is a "drastic remedy" which "should only be used in extreme situations." Id. (*citing* Flaksa v. Little River Marine Construction Co., 389 F.2d 885, 887 (5th Cir. 1968), *cert. denied*, 392 U.S. 928, 20 L. Ed. 2d 1387, 88 S. Ct. 2287 (1968)).

6

as to rise to the level of "bad faith". <u>See</u> U.S. Trustee's Brief at p. 14. Such contentions are wholly without merit and are not supported by the record.

First, there has been no evidence whatsoever of any contumacious "delay" or "harm" caused by the Debtor-Appellant. As set forth more fully in the Debtor-Appellant's Brief, as of the Petition Date, the Debtor-Appellant was not a party to any lawsuit; was not subject to any tax lien or warrant; owned no real property; was current on her residential real property lease obligations; was not a party to any lease of any personal property; was not a judgment debtor under any judgment; and did not have any property held under any restraint. <u>See</u> Debtor-Appellant's Brief at p. 5. Subsequent to her bankruptcy filing, none of the Debtor-Appellant's pre-Petition Date creditors appeared before the Bankruptcy Court and very few so much as bothered to file proofs of claim. All such creditors are now free to pursue their respective claims against the Debtor-Appellant. Moreover, the post-Petition Date amounts awarded to the Chapter 7 Trustee's professionals were not affected by the Debtor-Appellant's conduct in her bankruptcy proceedings (either under chapter 7 or 11). Clearly, no harm was caused by the Debtor-Appellant such as to warrant a one year refiling ban.

The Court should further note that the Debtor-Appellant's case was only converted to chapter 11 on October 2, 2007, a relatively short *eight months* prior to its dismissal. In the interim, the Debtor-Appellant moved expeditiously to successfully exit chapter 11, including, among other things, the reconciliation of the amounts she owed to the IRS, the solicitation of claims from creditors and obtained monies from DB Productions (and requested additional monies from her father) to fund a chapter 11 plan. It cannot reasonably be said that any "delay" was caused by any willful or dilatory conduct by the Debtor-Appellant. To the contrary, any perceived delay was merely result of the circumstances faced by the Debtor-Appellant.

Second, the Debtor-Appellant's conduct with regard to her "duties" as a debtor-in-possession, while not perfect, was not in any way egregious, willful or in bad faith such as to provide any basis to punish the Debtor-Appellant beyond the mere dismissal of her chapter 11 case. The U.S. Trustee's contentions in this regard (See U.S. Trustee's Brief at p. 16) can be summarily addressed as follows:

(a)    Any amounts that may have been owed to the U.S. Trustee on account of its statutory fees were minimal. Also, the U.S Trustee fails to advise this Court that such amounts were paid by the Debtor-Appellant despite the dismissal of her chapter 11 case. Moreover, chapter 11 cases in which the debtor owes the U.S. Trustee statutory fees are dismissed every day in this District without any prejudicial conditions attached;

(b)    The Debtor-Appellant had drafted a proposed plan of reorganization and disclosure statement which was ultimately not filed because of the professional fees awarded to the Chapter 7 Trustee's professionals and the filing Dismissal Motion. Importantly, the Bankruptcy Court had never established a deadline for the Debtor-Appellant to file a plan and disclosure statement, a common event in bankruptcy cases where there is a perceived lack of progress. The fact that, despite her best efforts, the Debtor-Appellant could not formulate a confirmable chapter 11 plan does not provide a basis for the dismissal of her case with prejudice;

(c)    There is absolutely no evidence that the Debtor-Appellant did not fully account for all amounts withdrawn from DB Productions as the U.S. Trustee suggests. DB Productions is a one-person operation which the Debtor-Appellant runs from her apartment and is the Debtor-Appellant's sole source of income. Notably, the U.S. Trustee does not contend that the Debtor-Appellant was not current with regard to the filing of her required monthly operating reports (which she was and which she had supplemented to include DB Productions' financial statements in addition to her own)

8

(R. 4-7), only that it deemed the content thereof insufficient. The Debtor-Appellant had nothing to hide from her creditors, the Bankruptcy Court or the U.S. Trustee concerning DB Productions' financial affairs or her own. Again, any perceived deficiency with regard to the Debtor-Appellant's disclosure of information concerning DB Productions does not support the harsh punishment imposed by the Bankruptcy Court;

(d) The fact that the Debtor-Appellant had reported losses on certain of her monthly operating reports most certainly does not support a one-year preclusion on any refiling by the Debtor-Appellant. Operating an unsuccessful business while under the protections of chapter 11 is not an offense worthy of the drastic punishment imposed by the Bankruptcy Court; and

(e) As discussed above, the Debtor-Appellant did not engage in any dilatory conduct of any kind with regard to the filing of a chapter 11 plan. The circumstances faced by the Debtor-Appellant in attempting to formulate a viable chapter 11 plan dictated the pace, rather than any dereliction of duty by the Debtor-Appellant as a debtor-in-possession.

Each of the above-discussed points raised by the U.S. Trustee as to the Debtor-Appellant's allege non-compliance with her duties as a debtor-in-possession present "plain vanilla" circumstances that exist in the myriad of unsuccessful chapter 11 cases that are dismissed each day. In the overwhelming majority of those cases, the debtor is not "kicked on the way out the door" with an attached prejudicial condition absent a clear showing of egregious misconduct or bad faith. Again, the Debtor-Appellant filed, in the first instance, her chapter 7 petition in a good faith attempt to obtain a discharge of her pre-petition obligations. Thereafter, the Debtor-Appellant gave her reorganization proceedings under chapter 11 her best shot but, unfortunately, she was not able to generate the funds necessary to confirm a viable chapter 11 plan. In the interim, the Debtor-Appellant made her best efforts to fully comply with all of her duties as a debtor-in-possession and

with the requests of the Bankruptcy Court and the U.S. Trustee for financial disclosures, explanations and the like. Such circumstances did not warrant the imposition of the drastic and harsh relief awarded by the Bankruptcy Court.

Finally, the U.S. Trustee's implication that the Debtor-Appellant somehow "abused the judicial process" is flaccid at best. Again, this was the Debtor-Appellant's first time filing for relief under the Bankruptcy Code and she was under no pressure whatsoever to do so. Said filing was precipitated by the Debtor-Appellant's good faith desire to obtain the "fresh start" afforded under the Bankruptcy Code, which her psychiatric professionals had advised would help the Debtor-Appellant to get her life back in order, and not to circumvent the legitimate rights of creditors or some other bad faith purpose. Ultimately, the Debtor-Appellant arguably received no benefit from her bankruptcy filing and, in turn, no creditor or party in interest benefitted from the dismissal of her bankruptcy case.

## CONCLUSION

Respectfully, viewed as a whole, the Debtor-Appellant's conduct before the Bankruptcy Court was not egregious, wilful or in bad faith. Despite the Debtor-Appellant's good faith efforts, her bankruptcy proceedings simply were not viable. Such circumstances did not warrant the drastic remedy of dismissal with prejudice to refiling for a period of one year as imposed by the Bankruptcy Court. As the Court held in In re Ventura, 375 B.R. 103 (Bankr. E.D.N.Y. 2007), dismissal of a bankruptcy case alone (*i.e.*, without any corresponding prejudicial period to refiling) is a punishment in and of itself. Id. at 112. Thus, it is often a prudent exercise of discretion by the bankruptcy court *not to* attach a prejudicial period to a dismissal when there has been no clear showing of bad faith, egregiousness or wilful misconduct. Id. By imposing a one year ban on any refiling by the Debtor-Appellant under the circumstances and the record before it, the Bankruptcy Court abused its discretion.

Based upon the foregoing, the Debtor-Appellant respectfully requests that this Court reverse the May 6, 2008 Order of the Bankruptcy Court to the extent that it precluded the Debtor-Appellant from seeking relief under the Bankruptcy Code for a period of one year and grant the Debtor-Appellant such other and further relief as may be deemed just and proper.

Dated: New York, New York
      September 5, 2008

                    Respectfully Submitted,

                    **PICK & ZABICKI LLP**
                    Counsel to the Debtor-Appellant

By:    **s/Douglas J. Pick**
          Douglas J. Pick, Esq. (DP-5935)
          Eric C. Zabicki, Esq. (EZ-0763)
          369 Lexington Avenue, 12th Floor
          New York, New York 10017
          (212) 695-6000